UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TANNER OWENS, an individual,<br><br>      Plaintiff,<br>  v.<br><br>KING COUNTY, PATTI COLE-TINDALL, and JESSE ANDERSON in their individual and official capacity,<br><br>      Defendants. | CASE NO. 2:24-cv-00453-TL<br><br>ORDER ON MOTION TO DISMISS |

  This case arises from Plaintiff's allegation that he was discriminated against when he was terminated from his position at the King County Sheriff's Office in King County, Washington. The instant matter comes before the Court on Defendants' Partial Motion to Dismiss Plaintiff's Second Amended Complaint ("SAC"). Dkt. No. 23. Having reviewed the motion, Plaintiff's response (Dkt. No. 26), Defendants' reply (Dkt. No. 27), and the relevant record, and finding oral argument unnecessary, *see* LCR 7(b)(4), the Court GRANTS the motion.

//

//

# I.     BACKGROUND

## A.     Factual Background

On its face, this is an employment-discrimination complaint. For the purposes of this Order, the Court accepts Plaintiff's factual allegations as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Defendant King County employed Plaintiff Tanner Owens as a Deputy in the County Sheriff's Office between approximately October 1, 2015, and December 1, 2022. Dkt. No. 21 ¶¶ 4, 10. Plaintiff identifies as a "Gay Male" and asserts that, while employed at the Sheriff's Office, he was "one of only a handful of Gay Males" there. *Id.* ¶ 11. Plaintiff further identifies as Caucasian. *Id.* ¶ 13.

The events leading to Plaintiff's dispute with Defendants began on or about February 17, 2022, when Plaintiff allegedly attended an online training "labeled 'BIPOC only.'" *Id.* ¶ 14. Plaintiff asserts that "BIPOC stands for Black, Indigenous, and people of color." *Id.* While attending the training, Plaintiff initially kept his camera turned off. *Id.* ¶ 16. After "several minutes," Plaintiff turned his camera on. *Id.* Plaintiff alleges that, "[a]fter [he] turned off his camera, he was removed from the meeting." *Id.* ¶ 17.[1] At some time after that, Plaintiff "complained directly to [Defendant Cole-Tindall]," King County Sheriff, "and [Defendant Anderson]," King County Undersheriff. *Id.* ¶ 21. Plaintiff also alleges that he "complained to Defendant" and "disclosed this training exclusion to the news media." *Id.* ¶¶ 19, 21.

---

[1] It is not clear whether Plaintiff turned his camera on, then off again, and was *then* removed from the meeting; or if Paragraph 17 means to state that, "After Plaintiff turned *on* his camera, he was removed from the meeting." Regardless, the Court understands the allegation to assert that, at some point after turning his camera on, Plaintiff was removed from the meeting, irrespective of whether it was on or off at the moment of the alleged removal.

On or about April 3, 2022, "IIU2022-076 was opened on Plaintiff." *Id.* ¶ 24.[2] Plaintiff alleges that this action was taken "for actions that were alleged to have occurred on [*sic*] or about November 2021." *Id.* On or about April 5, 2022, Plaintiff was placed on administrative leave. *Id.* ¶ 22. Plaintiff also alleges that, on or about that same date, he was suspended. *Id.* ¶ 23. Some six months later, on or about October 14, 2022, "Plaintiff was notified that he was the subject of an internal investigation for actions to have occurred in August of 2020." *Id.* ¶ 26. On or about October 17, 2022, "Plaintiff was notified that a Loudermill hearing would be held." *Id.* ¶ 27.[3] Throughout the pendency of these proceedings, Plaintiff asserts that he obtained legal representation from the Fraternal Order of Police. *Id.* ¶ 29.

On or about December 1, 2022, Plaintiff was terminated. *Id.* ¶ 1. After his termination, Plaintiff alleges that he was advised that his union, the "King County Police Officer's Guild," "would not pursue his termination through arbitration." *Id.* ¶ 30.

**B.     Procedural Background**

On April 4, 2024, Plaintiff filed a complaint, alleging violations of the First and Fourteenth Amendments to the United States Constitution under 42 U.S.C. § 1983. Dkt. No. 1 ¶¶ 36–55. Plaintiff also pleaded a state-law claim under the Washington Law Against Discrimination ("WLAD") and a state-law claim of outrage. *Id.* ¶¶ 56–61. On April 25, 2024, Defendants moved to dismiss the outrage claim under Federal Rule of Civil Procedure 12(b)(1), asserting that Plaintiff's failure to submit the tort claim to the State prior to filing suit precludes this Court from assuming jurisdiction over that claim. Dkt. No. 8 at 1. On May 9, 2024, Plaintiff and Defendants agreed that Plaintiff would amend his complaint by eliminating his state-law

---

[2] Plaintiff does not define or otherwise explain what "IIU2022-076" is. Based upon the surrounding context, the Court presumes that it refers to an internal investigation. *See, e.g.*, Dkt. No. 21 ¶ 26.

[3] Plaintiff does not define or otherwise explain what a "Loudermill hearing" is.

ORDER ON MOTION TO DISMISS - 3

1 claims. Dkt. Nos. 15, 15-1. Plaintiff then filed an Amended Complaint (Dkt. No. 16), and
2 Defendants withdrew their Motion to Dismiss (Dkt. No. 17).

3 After filing his Amended Complaint, on May 29, 2024, Plaintiff sought to fulfill the tort-
4 claim-filing requirement and duly "filed a tort claim with King County." Dkt. No. 18 at 2. Then,
5 on August 5, 2024, Plaintiff filed the SAC. Dkt. No. 21. In addition to the Section 1983 claims,
6 the SAC repleaded the alleged WLAD violation and the outrage claim. Dkt. No. 21 ¶¶ 56–61.
7 Although this was the second time Plaintiff had amended his complaint, there is no indication
8 that he complied with Federal Rule of Civil Procedure 15(a)(2) and obtained either Defendants'
9 consent or the Court's permission prior to doing so. (It is clear that Defendants agreed to
10 Plaintiff's *first* amendment of his complaint.) Because Defendants have not objected to this
11 procedural lapse and do not appear to have been prejudiced by it, the Court will overlook the
12 issue. However, Plaintiff is cautioned that future violations of the Federal Rules of Civil
13 Procedure, this District's Local Civil Rules, or this Court's Standing Order for Civil Cases may
14 result in the striking of noncompliant filings or other sanctions.

15 On August 19, 2024, Defendants filed the instant partial motion to dismiss. In their
16 motion, Defendants seek dismissal of: (1) Plaintiff's Fourteenth Amendment claims (*i.e.*, "First
17 Claim for Relief"); (2) Plaintiff's First Amendment claim (*i.e.*, "Second Claim for Relief);
18 (3) Plaintiff's WLAD claims based on sexual orientation and retaliation (*i.e.*, components of the
19 "Third Claim for Relief"); and (4) Plaintiff's state-law outrage claim (*i.e.*, "Fourth Claim for
20 Relief"). Dkt. No. 23 at 6–7. Defendants do not now seek dismissal of the "single WLAD race
21 discrimination claim against King County." *Id.* at 7.

## II.   LEGAL STANDARD

23 A defendant may seek dismissal when a plaintiff fails to state a claim upon which relief
24 can be granted. Fed. R. Civ. P. 12(b)(6). In reviewing a Rule 12(b)(6) motion to dismiss, the

Court takes all well-pleaded factual allegations as true and considers whether the complaint "state[s] a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient, a claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 672. "When reviewing a dismissal pursuant to Rule . . . 12(b)(6), 'we accept as true all facts alleged in the complaint and construe them in the light most favorable to plaintiff[ ], the non-moving party.'" *DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117, 1122 (9th Cir. 2019) (alteration in original) (quoting *Snyder & Assocs. Acquisitions LLC v. United States*, 859 F.3d 1152, 1156–57 (9th Cir. 2017)).

### III. DISCUSSION

**A.   First and Second Claims for Relief**

Plaintiff's First Claim for Relief consists of two counts, both brought under 42 U.S.C. § 1983, alleging violations of the Fourteenth Amendment to the United States Constitution. Dkt. No. 21 ¶¶ 36–46. Plaintiff's Second Claim for Relief, also brought under Section 1983, alleges violations of the First Amendment. *Id.* ¶¶ 47–55. The Court finds that, as pleaded, all counts of both claims are deficient and must be dismissed.

   **1.   Liability of King County and Its Officers**

As to both the First and Second Claims for Relief, Plaintiff has failed to adequately plead Section 1983 liability against Defendant King County and against Defendants Cole-Tindall and Anderson in their respective official capacities as Sheriff and Undersheriff. Courts treat municipal-employee defendants sued in their official capacities the same way they treat the municipality itself: "In order to sue a municipal entity—*including employees acting within their*

*official capacities*—a plaintiff must meet the oft-cited *Monell* standard, *i.e.*, the plaintiff must show that the alleged injury was inflicted through the execution or implementation of the entity's 'official policy.'" *Curtis v. City of Gooding*, 844 F. Supp. 2d 1101, 1109 (D. Idaho 2012) (citing *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978)) (emphasis added). Therefore, the same analysis applies to all three Defendants.

To plausibly assert a claim against a municipality under *Monell*, "a plaintiff must allege (1) that a municipality employee violated a constitutional right; (2) that the municipality has customs or policies that amount to deliberate indifference of that right; and (3) those customs or policies were the 'moving force' behind the constitutional right violation." *Hofschneider v. City of Vancouver*, 182 F. Supp. 3d 1145, 1151 (W.D. Wash. 2016) (citing *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)).

Here, the SAC is silent with respect to an underlying policy related to the complained-of conduct. *See generally* Dkt. No. 21. Each count of the First Claim for Relief alleges a single violation untethered to any allegation of an official agency or county policy. Count One alleges a "fail[ure] to provide adequate notice and opportunity to be heard regarding Plaintiff's termination." *Id.* ¶ 40. Count Two alleges a "pretextual internal investigation" and "termination." *Id.* ¶ 44. The Second Claim for Relief alleges a "refus[al] to advance [Plaintiff's] case to arbitration." *Id.* ¶ 48. The Court acknowledges that the Second Claim alludes to "the state's interest in 'labor peace,'" but this is merely Plaintiff's hypothetical supposition—nowhere does he point to evidence indicating that Defendants' conduct was actually motivated by an interest in preserving "labor peace." In any event, such a vague ideal is not a policy for the purpose of assigning Section 1983 liability to a municipality or its officers. *See Coming Up, Inc. v. City & Cnty. of S.F.*, 830 F. Supp. 1302, 1307 (N.D. Cal. 1993) (defining an official policy for Section 1983 purposes as either "a policy statement, ordinance, regulation or decision officially adopted

and promulgated by that body's officers" or a "custom . . . so permanent and well settled as to constitute a custom or usage with the force of law" (internal quotation marks and citations omitted)). Absent an allegation of a policy or custom, Plaintiff's claims against the County and its officers fail here.

The Court will dismiss Plaintiff's First and Second Claims for Relief, as against Defendant King County and Defendants Cole-Tindall and Anderson in their official capacities. However, because Defendants could have put Plaintiff on notice of this deficiency in their first motion to dismiss (so Plaintiff could also attempt to fix this issue when amending to address notice issue raised by Defendants) but did not do so, the Court DISMISSES WITHOUT PREJUDICE Plaintiff's First and Second Claims for Relief, as against King County and Defendants Cole-Tindall and Anderson in their official capacities, and will allow Plaintiff one final opportunity to properly plead the claim.

### 2. Defendants' Liability in Their Individual Capacities

Plaintiff has also brought his Section 1983 claims against Defendants Cole-Tindall and Anderson in their individual capacities. Dkt. No. 21 at 1. The Court examines these claims separately from Plaintiff's claims against these defendants in their official capacities as county officers.

Under Federal Rule of Civil Procedure 8(a), "a complaint fails to state a claim if it does not indicate which individual defendant or defendants are responsible for which alleged wrongful act." *Dodo Int'l Inc. v. Parker*, No. C20-1116, 2021 WL 4060402, at *8 (W.D. Wash. Sept. 7, 2021). "Allegations against a unitary bloc of 'Defendants'" are likewise inadequate. *Id.*

Plaintiff's First Claim for Relief does not meet this standard. In Count One, Plaintiff switches between allegations against "Defendants" and an unidentified "Defendant." *See* Dkt. No. 21 ¶¶ 39, 40. Upon review of the SAC, there is, to be sure, no way of knowing which

Defendant did what. Count Two is similarly deficient. Plaintiff lodges allegations against both "Defendants" while also referring to an unidentified "Defendant's" actions and omissions. *See id.* ¶¶ 44, 45. The counts are no less clear when considered alongside the "Factual Allegations" section of the SAC. The only specific references to Defendants Cole-Tindall and Anderson that Plaintiff offers are his allegations that, "After Plaintiff was excluded from the training, he complained directly to Sheriff and Undersheriff." *Id.* ¶ 21. Beyond that, however, the entirety of the SAC is given over to unspecified allegations; these are not sufficient to state a claim upon which relief can be granted.

As to Plaintiff's Second Claim for Relief, the first part[4] of the claim is deficient, because the asserted First Amendment violation is not plausibly alleged against *any* Defendant. Plaintiff asserts that he "attempted to use his membership in the Fraternal Order of Police because he feared his own union . . . would fail him. And *it* eventually did when it refused to advance his case to arbitration." Dkt. No. 21 ¶ 48 (emphasis added). By any interpretation, "it" refers to Plaintiff's union, not Defendants. That is, the plain language of the SAC indicates that "[Plaintiff's] own union" is responsible for "refus[ing] to advance his case to arbitration." *Id.* ¶ 48. Compounding the deficiency, even though Defendants pointed out in their Motion that Plaintiff appears to allege wrongdoing on the part of Plaintiff's union (*see* Dkt. No. 23 at 11), and not the actual Defendants, Plaintiff's response fails to address the problem beyond providing a conclusory, unsupported statement that does not substantively address the underlying flaw in the pleading. *See* Dkt. No. 26 at 3. Moreover, even if the Court looks past the apparently misdirected allegation, the Second Claim for Relief exhibits the same problem as the First: It

---

[4] Although not expressly pleaded this way, Plaintiff's Second Claim for Relief encompasses two separate allegations: one associated with Plaintiff's union representation (Dkt. No. 21 ¶¶ 47–53), and one associated with retaliation for Plaintiff's "complaining about racism and exclusion of training for being White" (*Id.* ¶¶ 54–55).

fails to ascribe specific wrongdoing to specific Defendants. Plaintiff alleges that, "By Defendant [*sic*] refusing to arbitrate Plaintiff's grievance, Defendant deprived Plaintiff of the benefits of his association with the FOP. . . . Defendants is [*sic*] now estopped from arguing that Plaintiff was required to work through his own Guild." Dkt. No. 21 ¶¶ 52–53. These nonspecific allegations are insufficient to state a claim.

The second part of Plaintiff's Second Claim for Relief alleges that "Defendants also retaliated against Plaintiff for complaining about racism and exclusion of training for being White. . . . Plaintiff was terminated in retaliation for raising these concerns and disclosing the disparate treatment to the media." *Id.* ¶ 54. Again, it is not clear from the language of the SAC who did what, and the Claim is thus insufficient as a matter of law.

Therefore, the Court DISMISSES Plaintiff's First and Second Claims for Relief, as against Defendants Cole-Tindall and Anderson in their individual capacities.

### B.     Third and Fourth Claims for Relief

Plaintiff's Third and Fourth Claims for Relief are state-law claims. As with the First and Second Claims for Relief, these claims appear to have been brought against Defendants Cole-Tindall and Anderson in both their individual and official capacities. Plaintiff alleges violations of WLAD and a claim of outrage. *Id.* ¶¶ 56–61.

#### 1.     Third Claim for Relief: WLAD

As to the Third Claim, Plaintiff alleges that he was discharged because of his color, sexual orientation, and for opposing a discriminatory practice (*i.e.*, "whistleblowing"). *Id.* ¶ 57. Defendants argue that Plaintiff "makes no allegations at any point in the [SAC] that any action was taken against him on account of his sexual orientation." Dkt. No. 23 at 15. The Court agrees. Plaintiff identifies himself as "a Gay Male, one of only a handful of Gay Males in the King County Sheriff's Office." Dkt. No. 21 ¶ 11. But this is the extent of Plaintiff's discussion about

his sexual orientation. He makes no effort, other than the conclusory allegation in Paragraph 57 (which simply states a legal conclusion), to identify a causal nexus between his termination and his sexual orientation. The allegation is less substantive than even a threadbare recital of the elements of a cause of action and is therefore insufficient as a matter of law.

As to Plaintiff's WLAD whistleblower claim, Defendants assert that Plaintiff has not adequately alleged the elements of such a claim. Dkt. No. 23 at 15. Defendants advise that Plaintiff cited the wrong statute in the SAC: "RCW 42.40.020 . . . only provides causes of action to individuals employed in . . . state government." *Id.* (internal quotation marks and underscore removed). Defendants note that, "Perhaps Plaintiff sought to plead a claim under RCW 42.41.040, a similar statute that provides a cause of action to employees of local governments." *Id.* But even then, Defendants argue, such a claim would fail as a matter of law, because Plaintiff failed to provide statutorily required notice to the county and failed to exhaust his administrative remedy prior to bringing suit. *See id.* at 15–16 (citing RCW 42.41.040(2)–(3)). In response, Plaintiff asserts that he "did intend to plead a claim under RCW 42.41.040 and seeks relief to amend the SAC." Dkt. No. 26 at 4. Plaintiff asserts further that he timely "filed a Human Rights Commission case on February 28, 2022 [*sic*]." *Id.* Notwithstanding the fact that February 28, 2022, *predates* Plaintiff's termination by some nine months and, consequently, does not fit into the chronological narrative of this case, the Human Rights Commission filing would not be enough to cure the deficiencies in the claim. Defendants point out that "[e]ven if . . . Plaintiff amend[ed] his complaint [again], the allegation that he filed a Human Rights Commission complaint . . . would not save [the] claim," because "a charge must be delivered to the *local government itself*," and "[t]he Human Rights Commission does not have jurisdiction for such a claim." Dkt. No. 27 at 5 (emphasis in original).

The Court agrees. Plaintiff's whistleblower claim is fatally flawed. The Court first notes that the applicable whistleblower procedure in this case is governed by King County's local whistleblower protection program, which Washington courts have found to be an adequate substitute for the state's statutory scheme. *See Stanwell v. King Cnty. Parks*, No. 440660-7-I, 2000 WL 1634608, at *6 (Wash. Ct. App. Oct. 30, 2000) (recognizing King County Whistleblower Protection Ordinance as legally sufficient whistleblower program under state law); *see* RCW 42.41.050 ("Any local government that has adopted or adopts a program for reporting alleged improper governmental actions and adjudicating retaliation resulting from such reporting shall be exempt from this chapter if the program meets the intent of this chapter.").

Pursuant to the County Whistleblower Protection Ordinance, "an employee who believes the employee has been retaliated against in violation of K.C.C. 3.42.030.E. must file a signed written complaint within six months of when the alleged retaliation occurred or the employee reasonably should have known of the occurrence. The complaint shall be filed with the ombuds." King Cnty., Wash., Code § 3.42.060(A); *see also* RCW 42.41.040(3) ("The charge shall be delivered to the local government."). Given that Plaintiff was terminated on December 1, 2022, Plaintiff would have needed to file his complaint with—and only with—the county ombuds by June 1, 2023. Plaintiff's assertion that he timely "filed a Human Rights Commission" case is thus irrelevant. *See* Dkt. No. 26 at 4. Plaintiff has failed to timely file his whistleblower complaint with King County, and it is too late for him to do so now.

Therefore, the Court DISMISSES Plaintiff's Third Claim for Relief with respect to sexual orientation and whistleblowing.

 2.     **Fourth Claim for Relief: Outrage**

As to Plaintiff's claim for outrage, Defendants argue that Plaintiff's allegations "fall far short" of the state's standard for outrage. Dkt. No. 23 at 17. "To state a claim for the tort of

1  outrage a plaintiff must show: (1) extreme and outrageous conduct; (2) intentional or reckless

2  infliction of emotional distress; and (3) actual result to the plaintiff of severe emotional distress."

3  *Snyder v. Med. Serv. Corp. of E. Wash.*, 145 Wn.2d 233, 242, 35 P.3d 1158 (2001). "The

4  conduct in question must be '*so outrageous in character, and so extreme in degree, as to go*

5  *beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable*

6  *in a civilized community.*'" *Birklid v. Boeing Co.*, 127 Wn.2d 853, 867, 904 P.2d 278 (1995)

7  (quoting *Grimsby v. Samson*, 85 Wn.2d 52, 59, 530 P.2d 291 (1975) (emphasis in original)). Or,

8  "[p]ut colloquially, the conduct must be so offensive that it leads a reasonable person to exclaim,

9  'Outrageous!'" *Dodge v. Evergreen Sch. Dist.*, 513 F. Supp. 3d 1286, 1300 (W.D. Wash. 2021).

10      The Court finds that the complained-of conduct here is not sufficiently egregious to

11 sustain a claim of outrage. Plaintiff suggests that one instance of discrimination, combined with

12 retaliatory discharge, is inherently outrageous as a matter of law. Dkt. No. 26 at 9. But this is not

13 in line with Washington case law. In *Schonauer v. DCR Entertainment, Inc.*, for example, the

14 Washington Court of Appeals reversed the trial court's dismissal of claims of "hostile work

15 environment sexual harassment, quid pro quo sexual harassment, and retaliatory discharge in

16 violation of [WLAD]," but *affirmed* the trial court's dismissal of the plaintiff's outrage claim. 79

17 Wn. App. 808, 812, 905 P.2d 392 (1995). In that case, a waitress endured sexual harassment,

18 then was subsequently fired when she refused to dance nude on stage while management

19 "broadcast" to the audience information about her sexual preferences and sexual experience. *Id.*

20 at 813–14. That, under Washington law, is not outrageous. Moreover, where a claim of outrage is

21 predicated upon termination of employment, this Court has interpreted Washington law as

22 prescribing that "[i]t is *the manner* in which a discharge is accomplished that might constitute

23 outrageous conduct." *Leishman v. Wash. Att'y Gen. Off.*, No. C20-861, 2023 WL 7166183, at

24 *12 (W.D. Wash. Oct. 31, 2023) (citing *Dicomes v. State*, 113 Wn.2d 612, 630, 782 P.2d 1002

(1989)) (emphasis added). That is to say, the issue is *how* an employee was fired, not *that* they were fired. Here, Plaintiff does not allege any facts to suggest that his discharge was effected in a particularly outrageous manner. Rather, both Plaintiff's SAC and Response rely on conclusory allegations that "removing an employee from training due to his race was outrageous and extreme," as was his discharge. *See* Dkt. No. 21 ¶¶ 58–61; Dkt. No. 26 at 4. The Court finds nothing in the allegations that would lead a reasonable person to exclaim, "Outrageous!"

Therefore, the Court DISMISSES Plaintiff's Fourth Claim for Relief.

C. **Dismissal With and Without Prejudice**

"Normally, when a viable case may be pled, a district court should freely grant leave to amend." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011). "[A] party is not entitled to an opportunity to amend his complaint if any potential amendment would be futile." *Mirmehdi v. United States*, 689 F.3d 975, 985 (9th Cir. 2012). Further, "the district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Cafasso*, 637 F.3d at 1058 (citation omitted).

Although the Court's Order grants Defendants' Motion to Dismiss in its entirety, the Court finds that some of Plaintiff's claims can repleaded as viable claims. Plaintiff's Section 1983 claims are salvageable. *See supra* Section III.A. Accordingly, these claims are dismissed without prejudice. So, too, is Plaintiff's WLAD claim predicated on sexual orientation. This claim is dismissed without prejudice. *See supra* Section III.B.1. However, the Court flags the problematic use of the terms "Defendants" and "Defendant" generically by Plaintiff throughout the SAC. *See generally* Dkt. No. 21. The generic use of the terms makes it impossible to tell whether "Defendants" refers to all Defendants collectively or to some subgroup of them, and renders it unclear which "Defendant" is the subject of a particular allegation.

ORDER ON MOTION TO DISMISS - 13

Plaintiff's WLAD whistleblower claim, however, fails as a matter of law: Plaintiff has failed to comply with statutory requirements for such a claim, and it is too late for him to do so now. This claim is dismissed with prejudice.

As to Plaintiff's claim of outrage, the Court is disinclined to give Plaintiff a *fourth* opportunity to plead this claim. The allegations, as pleaded, fall far short of raising a legitimate claim of outrage, and the Court finds that, if truly outrageous facts exist, Plaintiff would surely have pleaded them by now. Therefore, Plaintiff's claim of outrage is dismissed with prejudice.

Finally, the Court notes that Defendants did not move to dismiss Plaintiff's WLAD claim based on color. Dkt. No. 21 ¶ 57. That claim is sustained irrespective of the content of this Order.

### IV.   CONCLUSION

Accordingly, Defendants' Partial Motion to Dismiss (Dkt. No. 23) is GRANTED. It is hereby ORDERED:

(1) Counts One and Two of Plaintiff's First Claim for Relief for a violation of 42 U.S.C. § 1983 (Fourteenth Amendment) are DISMISSED WITHOUT PREJUDICE.

(2) Plaintiff's Second Claim for Relief for a violation of 42 U.S.C. § 1983 (First Amendment) is DISMISSED WITHOUT PREJUDICE.

(3) Plaintiff's Third Claim for Relief for violations of WLAD is DISMISSED WITHOUT PREJUDICE as to claim(s) based on sexual orientation, and DISMISSED WITH PREJUDICE as to claim(s) based on whistleblowing.

(4) Plaintiff's Fourth Claim for Relief for outrage is DISMISSED WITH PREJUDICE.

(5) Should Plaintiff believe he has the facts to file a Third Amended Complaint consistent with this Order, he SHALL file the amended complaint by **January 6, 2025.**

Dated this 4th day of December 2024.

Tana Lin
United States District Judge